## McDonough v. Strickland Transportation Co.

*Snyder & Lowenschuss*, for plaintiff.

*Donahue, Battle & Donahue*, for defendant.

BARBIERI, J., March 30, 1970.—Before the court is an appeal by plaintiff from a verdict for defendant entered by an arbitration panel.

The facts of this case were developed mainly by stipulation of the parties and may be simply stated.

On August 6, 1965, plaintiff delivered to defendant's loading platform a shipment consisting of 80 cartons of chocolate candies. The candy had a value of $2400 and was to be delivered to Kerrville, Texas. In evidence is the original bill of lading for this transaction, the first copy of which is identified as "P-1" and the second or carbon copy of which is identified as "D-1." On the face of "P-1" and "D-1" is the notation entered by plaintiff

*"PERISHABLE"* MUST BE DELIVERED BY
**** 8 / 11
"PERISHABLE"

In addition, the face of "P-1" and "D-1" shows a notation by defendant in red pencil

*"RUSH*
PERISHABLE"

Finally, defendant circled in red ink plaintiff's notation on the carbon copy of the bill of lading ("D-1"), specifically the word "PERISHABLE" and the words "MUST BE DELIVERED BY 8/11." Plaintiff's position is that defendant's action in circling the notations in question in red ink created a binding agreement or undertaking by defendant to deliver the candy by August 11, 1965. The candy actually was delivered on August 16, 1965. Defendant argues, on the other hand, that the reverse side of the bill of lading sets out contract terms that would preclude any such agreement. Specifically, defendant points to section 2(a) of the standard contract on the reverse side of the bill of lading which, in relevant part, provides

"No carrier is bound to transport said property by any particular schedule, train, vehicle or vessel or in time for any particular market *or otherwise than with* reasonable dispatch." (Italics supplied.)

It is evident that there is merit in both positions. While it is true that defendant need deliver only with

reasonable dispatch, it is also true that defendant's response to plaintiff's notation on the face of the bill of lading evidences either an agreement by defendant to deliver by August 11th, or a representation upon which plaintiff had the right to rely that delivery would be made by that date. Certainly, defendant was under no duty to accept the goods for special delivery or otherwise than for delivery "with reasonable dispatch." When defendant marked or circled the delivery date of August 11, 1965, this was at least a definition by it of "reasonable dispatch."

We believe that under the circumstances in this case, defendant, by reason of its conduct and representations to plaintiff, should be estopped to assert the strict letter of its ordinary common carrier duties and responsibilities.

It is clear, therefore, that if delivery by the time indicated were the controlling issue in this litigation, the evidence would support a finding that reasonable dispatch was defined in this particular instance to require defendant to deliver the candy by August 11, 1965.

However, we need not reach the issue of delay in delivery, because plaintiff has adduced no proof that the damage to the shipment of chocolates was caused during, and because of the five days of delay. While this court might conceivably conclude, by judicial notice, that Texas could be hotter than Philadelphia in August, we could not also fix the precise melting temperatures of chocolate either here, in Texas or at some perhaps equally hot way point. In short, the record is devoid of any competent evidence as to when or where the spoilage took place.

Also, it may be noted in passing that plaintiff's salesman testified that the purpose for delivering the chocolates by August 11th was so that they would ar-

rive in time to be sold to a musical band in Kerrville, Texas, before the band broke up for the summer on August 12th. There were further indications from plaintiff that chocolate candy would not spoil simply because it was kept in an unrefrigerated unit over a period of time. Plaintiff's evidence suggests that chocolates require only an even temperature to avoid spoilage. For these reasons, the court is of the opinion that plaintiff has not proved by a preponderance of the evidence that the damage to the chocolates was due to the delay in shipment from August 11th to August 16, 1965. Accordingly, the verdict of the court will be in favor of defendant.

### ORDER

And now, March 30, 1970, the court finds in favor of defendant.